## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSÉ LIMA CASTRO** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-2049** |
| **ROBERT TANNER, CCE, WARDEN**<br>**22ND JUDICIAL DISTRICT COURT** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Relevant Factual and Procedural Background

The petitioner, José Lima Castro ("Castro"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On July 6, 2005, Castro was charged by Bill of Information in Jefferson Parish with one count of armed robbery while armed with a handgun.[3]  Castro entered a plea of not guilty to the charge on July 15, 2005.[4]

The record reflects that, on June 18, 2005, Susan Guy was working as a teller at the Bank

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. Nos. 1, 48.

[3]St. Rec. Vol. 5 of 9, Bill of Information, 7/6/05.

[4]St. Rec. Vol. 5 of 9, Minute Entry, 7/15/05.

One branch on Clearview Boulevard in Harrahan, Louisiana.[5]  When the bank opened that morning at 9:00 a.m., a man later identified as Castro entered the lobby and approached Guy's teller station. Castro opened his bag to show Guy a gun, which appeared to her to be a revolver, and told her he would shoot her.  He ordered Guy to give him money in $100.00 bills and not to include a "dye pack."  Castro handed Guy an empty bag, she put two $5,000.00 "straps" from her teller drawer into it.  As instructed, she did not add a dye pack.  Castro thanked her and left the bank.

When Castro left the bank, Guy pressed the security button and notified her manager that she had been robbed.  When the police arrived at the scene, Guy gave them a description of the robber. She told officers he was a Hispanic man who was 5'6" or 5'7" tall, and weighed 140 to 170 pounds, with curly hair and a thick mustache.  She also told them that he was wearing a baseball cap and oversized sweatpants.  One of the officers took the bank's surveillance videotape of the robbery, which eventually was released to the news media.

Raymond Parker, the manager of Shrewsbury Manor in Jefferson, rented rooms at the establishment by the week and by the month.  Parker saw the bank tape on the evening news and in the newspaper and recognized the man as Castro, who was renting room 25 in the complex.  Parker contacted police with that information, and told Jefferson Parish Detective Roger Gorumba and Sergeant Martin Dunn, III, that he had recently seen Castro with more money than usual.  Although another man shared the apartment for a short time, Parker was certain it was Castro in the photos.

Detective Gorumba verified Parker's testimony and spoke to other residents at Shrewsbury Manor to determine whether anyone else had information about Castro.  He eventually performed

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Castro*, 40 So.3d 1036, 1040-42 (La. App. 5th Cir. 2010); St. Rec. Vol. 3 of 9, 5th Cir. Opinion, 09-KA-887, pp. 3-7, 5/25/10.

a consensual search of Castro's room and had the crime scene division photograph the evidence collected in the search.  Among the items recovered in the search were a B.B. gun and dark colored sweatpants.  Detective Gorumba also collected paperwork from the room that bore Castro's name.

Sergeant Dunn went to the house at 22 Labarre Place on information that Castro's girlfriend, Laurie Hughes, lived there.  When he arrived, he saw Castro sitting in the passenger seat of a brown Buick.  Sergeant Dunn called for a marked backup unit and then asked Castro to step out of the car.  Castro complied. Sergeant Dunn advised Castro of his rights, and Castro acknowledged that he understood.  When the uniformed officers arrived, they recovered from Castro's pocket a roll of money that was still in a bank wrapper.  Sergeant Dunn obtained Hughes's written consent to search the Buick.  The uniformed officers who searched the car retrieved a Family Dollar Store shopping bag with merchandise in it, a Sharper Image shopping bag with merchandise in it, a T-Mobile cellular telephone with a store receipt, and a BeBe shopping bag with merchandise in it.

Jefferson Parish Detective Sergeant Dax Russo had the Buick towed to the detective bureau of the sheriff's office.  He had another officer transport Castro to the detective bureau, where he conducted a tape-recorded interview.  Castro first gave his name as Manuel Castro.  After he later admitted that was his brother's name, he advised the officers that his real name was José L. Castro.

During the interview, Castro admitted he committed the robbery.  He identified himself in the surveillance photograph.  He said he had lost his wallet, and he was desperate for money to pay his rent and to buy food to eat.  Castro said he used a B.B. gun in the robbery.  He used the money he obtained in the robbery to buy food, jewelry, and a telephone, most of which was recovered by police from the Buick.  He spent about $2,000, and gave his girlfriend about $500.  When he was stopped by police on Labarre Place, he had some of the money on his person.

On March 15, 2006, Castro's appointed counsel filed a motion to appoint a sanity commission to determine Castro's competence to proceed to trial.[6]  By letter dated April 12, 2006, the commission, composed of Richard Richoux, MD, and Rafael Salcedo, Ph.D., informed the Trial Court that Castro at that time was "grossly psychotic, delusionally paranoid, and in no way even remotely close to being competent to stand trial."[7]  Based on their recommendation, on April 19, 2006, the Court found Castro incompetent to stand trial and order him committed to the Feliciana Forensic Facility in Jackson, Louisiana.[8]

On January 16, 2008, Drs. Richoux and Salcedo submitted a follow-up report to the Trial Court indicating that they found Castro was "attempting to malinger non-existent psychopathology."[9]  This finding was based on the records from his examinations and treatment at the Eastern Louisiana Mental Health System - Forensic Division and the commission's re-examination of Castro.  On their examination, Drs. Richoux and Salcedo noted that Castro was not prescribed or in need of psychotropic medication and displayed no signs or symptoms of a psychotic disorder.  They also found that Castro "has a fairly good command of the English language."[10]  Based on these revised findings and recommendation, on March 5, 2008, the Trial Court found Castro competent to proceed to trial.[11]

---

[6]St. Rec. Vol. 5 of 9, Motion to Appoint Sanity Commission, 3/15/06; Trial Court, 3/20/06.

[7]St. Rec. Vol. 1 of 9, Letter from Commission, 4/12/06.

[8]St. Rec. Vol. 5 of 9, Hearing Minutes, 4/19/06; Order of Commitment, 4/19/06; St. Rec. Vol. 6 of 9, Competency Hearing Transcript, 4/19/06.

[9]St. Rec. Vol. 5 of 9, Letter from Commission, 1/16/08.

[10]*Id.*

[11]St. Rec. Vol. 5 of 9, Minute Entry, 3/5/08; St. Rec. Vol. 6 of 9, Competency Hearing Transcript, 3/5/08.

Castro was tried before a jury on March 31 and April 1, 2009, and found guilty as charged.[12] On May 13, 2009, the Trial Court denied Castro's post-trial motions and, after waiver of legal delays, sentenced Castro to imprisonment at hard labor for thirty-three (33) years without benefit of parole, probation, or suspension of sentence.[13]  The Court also later denied Castro's motion to reconsider the sentence.[14]

On direct appeal, Castro's appointed counsel argued that the sentence imposed was excessive.[15]  Castro filed *pro se* a supplemental brief in which he raised the following errors:[16] (1) his confession was erroneously admitted in to evidence where it was coerced and should have been suppressed; (2) he was denied due process rights to independent psychiatric assistance at trial; (3) the Trial Court erred when it (a) improperly admitted evidence seized in violation of the Fourth Amendment, (b) denied him a copy of the police incident report, (c) denied him access to records related to Deputy Tierney, and (d) denied him the right to confront Deputy Tierney; (4) the police lacked probable cause to arrest him without a warrant; (5) the pretrial and in-court identifications were suggestive and should have been suppressed; (6)  his due process rights were violated when he was denied a Spanish interpreter at the suppression hearing held August 28, 2008 and at the second day of trial; (7) the Trial Court should have suppressed the items seized from his home, that is the sweatpants, the watch, and the gun, which were not proven to be related to the crime; (8) his

_____

[12]St. Rec. Vol. 5 of 9, Trial Minutes, 3/31/09; Trial Minutes, 3/31/09; Jury Verdict, 4/1/09; St. Rec. Vol. 6 of 9, Trial Transcript, 3/31/09; St. Rec. Vol. 7 of 9, Trial Transcript (continued), 3/31/09; Trial Transcript, 4/1/09.

[13]St. Rec. Vol. 6 of 9, Sentencing Minutes, 5/13/09; St. Rec. Vol. 7 of 9, Sentencing Transcript, 5/13/09.

[14]*Id.*; St. Rec. Vol. 6 of 9, Trial Court Order, 9/3/09; Motion to Reconsider Sentence, 5/18/09.

[15]St. Rec. Vol. 7 of 9, Appeal Brief, 09-KA-0887, 11/13/09.

[16]Castro's nonsensical numbering of his claims was resolved by the Louisiana Fifth Circuit Court of Appeal into nine consolidated issues.

second appointed counsel provided ineffective assistance when she failed to prepare a defense, and appellate counsel was ineffective where he was "lax in filing issues" and disinterested in the case; and (9) the Trial Court erred in admitting the redacted copy of The Times-Picayune article. The Louisiana Fifth Circuit affirmed Castro's conviction and sentence on May 25, 2010, finding no merit in the claims.[17]

The Louisiana Supreme Court denied Castro's related writ application without stated reasons on January 7, 2011.[18] His conviction and sentence became final ninety (90) days later, on April 7, 2011, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

In the meantime, Castro submitted an application for post-conviction relief to the Trial Court on January 24, 2011, in which he raised the following grounds for relief:[19] (1) he was denied effective assistance of counsel where (a) trial counsel failed to (i) secure an interpreter for him at trial, (ii) confront and cross-examine Deputy Tierney and Larry Hartford at trial, (iii) object to

---

[17]*Castro*, 40 So.3d at 1036; St. Rec. Vol. 3 of 9, 5th Cir. Opinion, 09-KA-0887, 5/25/10.

[18]*State v. Morgan*, 73 So.3d 381 (La. 2011); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2010-KO-1323, 1/7/11; La. S. Ct. Writ Application, 10-KO-1323, 6/8/10 (dated and postal metered 6/2/10); St. Rec. Vol. 2 of 9, La. S. Ct. Letter, 2010-KO-1323, 6/8/10.

[19]St. Rec. Vol. 3 of 9, Uniform Application for Post-Conviction Relief and Memorandum in Support, 1/26/11 (dated 1/24/11).

Sergeant Dunn's hearsay testimony about Hartford's identification, (iv) request a psychiatric expert for trial, (v) obtain Castro's mental health records, and (vi) request that a photographic lineup be conducted, and (b) appellate counsel failed to examine the record for all of the errors in this case, including (i) he was denied a photographic lineup, (ii) his confession was coerced, (iii) the Trial Court denied the motion for expert funds for a defense psychiatrist, and (iv) trial counsel provided ineffective assistance; (2) the Trial Court erred by allowing inadmissible evidence to be admitted at trial when the State introduced the redacted copy of the Times-Picayune article; (3) the Trial Court did not use the proper standard to determine whether the verdict was contrary to the law and evidence when denying the motion for new trial; (4) the Trial Court erred by allowing irrelevant evidence to be admitted at trial over counsel's objections when the State introduced the B.B. gun, a wristwatch, clothing, and sweatpants seized from his home; (5) he was denied due process where he was not provided with funding for an expert psychiatrist at trial; (6) the identification procedure and in-court identifications were unduly suggestive; (7) he was not provided with an interpreter at trial; (8) the confession should have been suppressed and not presented at trial; and (9) his right to confrontation and cross-examination and the hearsay rule were violated during trial.

After receiving a response from the District Attorney, the Trial Court denied Castro's application on July 5, 2011.[20]  The Court held that the issues and arguments under claims numbers two through nine, with some exceptions, were procedurally barred from post-conviction review pursuant to La. Code Crim. P. art. 930.4(A) which prevents further review of claims already resolved on direct appeal.  The Court also found the sub-claims under issue numbers 6 and 9 contesting Hartford's identification being admitted through alleged hearsay testimony of Sergeant

---

[20]St. Rec. Vol. 4 of 9, Trial Court Order, 7/5/11; State's Response, 5/23/11; St. Rec. Vol. 2 of 9, Trial Court Order, 2/4/11.

Dunn, the in court and pretrial identifications, and his right to cross-exam Hughes and Hartford were procedurally barred under La. Code Crim. P. art. 930.4(B) and (C) because they were not raised prior to trial and could have been but were not raised on appeal.  As for the first claim, ineffective assistance of trial and appellate counsel, the Court noted that most of the claims were based on matters found meritless on direct appeal and held that the claims were without merit under *Strickland v. Washington*, 446 U.S. 668 (1984).

The Louisiana Fifth Circuit denied Castro's related writ application on September 14, 2011, affirming the reasons given by the Trial Court.[21]  On March 1, 2013, the Louisiana Supreme Court denied Castro's related writ application without stated reasons.[22]

## II.    Federal Petition

On August 15, 2012, the Clerk of this Court filed Castro's federal petition for habeas corpus relief in which, under a broad reading, seventeen grounds for relief:[23]

(1)    his right to confront and cross-examine witnesses was abridged when (a) the arresting officers were allowed to testify on behalf of witnesses who were not called at trial, (b) Deputy Tierney was not cross-examined in any proceeding, and (c) the Trial Court erred in allowing hearsay statements of witnesses to be presented by the State through the officers' testimony at trial;

(2)    (a) the Trial Court used the wrong standard to determine whether the verdict was contrary to the law and evidence, (b) he is entitled to a new trial pursuant to the weight of the evidence in accordance with La. Code Ev. art. 604, and (c) the Trial Court erred in denying the motions for post-verdict judgment of acquittal and for new trial in light of its prior ruling on the defense's motion in limine to exclude hearsay;

---

[21]St. Rec. Vol. 8 of 9, 5th Cir. Order, 11-KH-793, 9/14/11; 5th Cir. Writ Application, 11-KH-793, 8/9/11 (dated and postmarked 8/1/11).

[22]*State ex rel. Castro v. State*, 89 So.3d 1186 (La. 2012); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2011-KH-2072, 5/18/12; La. S. Ct. Writ Application, 11-KH-2072, 9/22/11 (dated 9/20/11); St. Rec. Vol. 4 of 9, La. S. Ct. Letter, 2011-KH-2072, 9/22/11 (showing postal meter 9/20/11).

[23]Rec. Doc. No. 1.

(3)     the State withheld the psychiatric records from Pine Prairie Correctional Center;

(4)     (a) the State withheld evidence, i.e. the police report, to establish probable cause for the arrest, and (b) the arrest was unlawful where the State failed to prove probable cause;

(5)     the search and seizure was unlawful and made without a showing of probable cause;

(6)     the record does not contain a copy of the police report in violation of the due process clause;

(7)     the State allowed Sergeant Dunn to testify falsely knowing that Deputy Tierney was the arresting officer;

(8)     the confession was coerced and should not have been introduced at trial;

(9)     (a) he was denied the right to psychiatric assistance for the defense, and (b) the Trial Court erred by failing to abide by its ruling on the defense's motion in limine to exclude hearsay statements of any witness, including Hartford and Hughes, when they would not be called at trial;

(10)    the Trial Court erred in allowing inadmissible evidence to be introduced over defense counsel's objection;

(11)    the Trial Court erred in allowing irrelevant evidence to be introduced at trial;

(12)    the Trial Court erred in denying him an interpreter in violation of Louisiana law;

(13)    the Louisiana Fifth Circuit erred in failing to consider his claim that the State withheld the psychiatric records from Pine Prairie Correctional Center;

(14)    a conflict of interest occurred when the case was reassigned to a new judge prior to trial;

(15)    the Trial Court erred in calling a recess during his testimony and then refusing to allow him to continue to testify;

(16)    he was denied effective assistance of trial counsel because (a) counsel failed to secure a Spanish translator at trial, (b)(i) counsel failed to cross-examine Officer Tierney on the lawfulness of the search and seizure, (ii) counsel failed to cross-examine Hartford about the reliability of his identification of petitioner, (iii) counsel failed to secure a line-up for Guy to identify the petitioner, (iv) counsel failed to prepare a defense or plea bargain for a plea of not guilty by reason of insanity, (v) the State interfered with his right to effective assistance when the Trial Court denied counsel's side-bar request for Tierney's personnel information, (vi) counsel's errors were not trial strategy errors, and (vii) counsel failed to secure the psychiatric records after issuing the subpoena; and

(17)    he was denied effective assistance of appellate counsel where counsel failed to conduct a complete examination of the record to discover the violations of his constitutional rights and ineffective assistance of trial counsel.

The State initially filed a response in opposition to Castro's petition arguing that not all of Castro's claims were exhausted in the state courts, that some claims were in procedural default, and that he was not entitled to federal relief on the remaining claims.[24]  In support of the exhaustion defense, the State argued that Castro failed to raise any specific issues in his post-appeal writ application to the Louisiana Supreme Court, and instead simply attached his appellate brief as an exhibit.  The State argued that this was insufficient to complete exhaustion of any of the claims raised on direct appeal.

Castro replied to the State's response claiming that he was unaware that he was required to provide a memorandum with his various writ applications to complete exhaustion and that this was cause to avoid both his failure to exhaust and his procedural default.[25]

Upon its initial review of the record, this Court resolved that Castro's post-appeal writ application to the Louisiana Supreme Court and the attachments thereto were sufficient to comply with the requirement that Castro "fairly presented" his claims to the state's highest court for exhaustion purposes under the holding in *Baldwin v. Reese*, 541 U.S. 27 (2004).  In response to that order, the State filed a supplemental response arguing that Castro failed to exhaust Claim No. 15, which is raised for the first time in his federal petition and are now in technical procedural default.[26]  The State also argues that Castro's Claim No. 9(b) is in procedural default having been barred from

---

[24]Rec. Doc. No. 18.

[25]Rec. Doc. No. 32.

[26]Rec. Doc. No. 47.

post-conviction review in the state courts.  The State also contends that Castro's Claim Nos. 4 and 5 are not subject to federal review and the remaining claims are without merit.

Castro replied to the State's opposition response arguing that the State's procedural objections are legally mistaken and that he is entitled to relief after review of his claims.[27]

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[28] applies to this petition, which is deemed filed in this Court no later than August 8, 2012.[29]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State apparently concedes and the record confirms that Castro's petition is timely filed. Under the Court's initial review, it appeared that Castro's claims had been exhausted in the state courts.  The State again raises the exhaustion defense as to one of Castro's claims challenging the

---

[27]Rec. Doc. No. 48.

[28]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Castro's federal habeas petition on August 15, 2012, when pauper status was granted.  Castro dated his signature on the form petition and the attached memorandum on August 8, 2012.  This is the earliest date appearing in the record on which he could have presented the pleadings to the prison officials for mailing to the Court.

recess during his testimony and the Trial Court's refusal to allow him to retake the stand.

Castro's inconsistent numbering and presentation format of his claims in both the state and federal pleadings makes it difficult to resolve exactly which arguments are in fact fully exhausted, including the fifteenth claim distinguished in the State's response and perhaps several others which upon reflection may not have been directly raised in Castro's state court review.[30]  Nevertheless, because the Court finds the claims to be without merit, any failure to complete exhaustion does not prohibit this Court from addressing Castro's claims.[31]  28 U.S.C. § 2254(b)(2).

Furthermore, the State contends and the record shows that at least one of Castro's claims is in procedural default.  The Court will address this defense before proceeding to the merits of the remaining claims.  The Court also recognizes that, on post-conviction review, the state courts refused to consider several of Castro's claims under La. Code Crim. P. art. 930.4(A) because they had been addressed on direct appeal.  Under Louisiana law, La. Code Crim. P. art. 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal.  *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).  This rule presumes that the claims have been fully reviewed by the state appellate court on direct appeal and by the Louisiana Supreme Court and need not be considered again on post-conviction application.  *Id*.  However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits."  *Id*.  For this reason, the bar does not preclude habeas review of claims like Castro's that were considered on direct appeal.  This court simply "look[s]-through" the ruling on collateral review and considers only

---

[30]The Court specifically references certain arguments contained in Claim Nos. 3, 5, 7, 13, 14, 15, and 16(b)(v), (vi) as presented to and numbered by this Court.

[31]Because the Court will address the merits of Claim No. 15, the Court need not discuss the State's contention that the claim is in technical procedural default.

the direct appeal proceeding.  *Id.*, at 1582-83.  Thus, the Court is not precluded from review of the merits of Castro's claims reviewed on direct appeal even though the state courts declined to address them on post-conviction review.

**IV.    Procedural Default (Claim Nos. 1(a), 1(c), 2(c), and 9(b))**

The State asserts that one of Castro's claims, No. 9(b) regarding hearsay evidence, is in procedural default, having been dismissed by the state courts as procedurally barred from post-conviction review under La. Code Crim. P. art. 930.4(B) and (C) for failure to raise the claim at trial or on direct appeal.  The Court's review reveals that the related and similar claims identified as Claim Nos. 1(a), 1(c), and 2(c) are also procedurally barred from review as they are a part of Castro's "hearsay evidence" challenge brought in his direct appeal.

The procedural default doctrine was initially invoked by the State.  The Court has simply expanded its application to the latter claims which were part of the barred claims raised on post-conviction review.  The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim.  *Nobles*, 127 F.3d at 420.  This court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered.  *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006); *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).

In this case, the State has raised procedural default.  This Court has simply further identified the claims that were included in the bar as it was applied by the post-conviction state courts.  Nevertheless, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is** ***sua sponte*** <u>**expanding**</u> **the issue of procedural default and that**

13

**petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**.  *Magouirk*, 144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

On post-conviction review, the Louisiana trial court held that Castro's post-conviction claims challenging the suggestiveness of the in-court and pretrial identification processes and the presentation of hearsay statements and identifications through Sergeant Dunn and the other deputies in violation of his confrontation rights were procedurally barred under La. Code Crim. P. art. 930.4(B) and (C).  The higher courts' denied Castro's related writ applications relying upon these same reasons.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned

state court opinion).

The Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of the claims on federal habeas corpus review.  As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.    <u>Independent State Grounds</u>

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  In this case, the Trial Court denied relief on Castro's claims citing La. Code Crim. P. art. 930.4(B) and (C).  These reasons were also relied upon by the Louisiana Fifth Circuit and the Louisiana Supreme Court.  *Ylst*, 501 U.S. at 802.

Federal courts have repeatedly found that La. Code Crim. P. art. 930.4(B) and (C) are well-established and independent state law procedural grounds regularly applied by the state courts to deny review of improperly raised post-conviction claims.  *Bennett*, 41 F.3d at 1583 (Article 930.4 is independent and adequate basis to bar federal review); *Thomas v. Cain*, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (same); *Washington v. Cain*, No. 98-0584, 2000 WL 863980, at *4 (E.D. La. Jun. 27, 2000) (Duplantier, J.) (same).  The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review.  These rulings were independent of federal law and relied strictly on state procedural requirements.

### B.    <u>Adequate State Grounds</u>

The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v.*

*Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, __U.S.__, 131 S. Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902.  In addition, a state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Beard*, 558 U.S. at 60.  State procedural rules enjoy a presumption of adequacy when the state court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise.  *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).  In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case.

> Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *See e.g.*, *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).

However, it is <u>not</u> within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in this case, the bar must stand.

As discussed above, the state trial court relied on well-settled Louisiana doctrine arising from La. Code Crim. P. art. 930.4(B) and (C) to bar review of Castro's claims. The federal courts have repeatedly held that the provisions of La. Code Crim. P. art. 930.4(B) and (C) are adequate to foreclose federal review of a claim barred thereunder by the state courts. *See Thomas*, 2012 WL 1885088, at *4 (finding Article 930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors

raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds by Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

For the foregoing reasons, the bars imposed on Castro's claims are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review Castro's claims unless he established one of the following exceptions.

### C.   Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128-29 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded her efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or her counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486; *see also Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1316 (2012) (discussing when counsel's error may be cause to overcome a procedural default) (citing *Coleman*, 501 U.S. at 753, 755).

18

In this case, Castro has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  The Court's review of the record does not show that any factor external to the defense prevented Castro from raising these claims in a procedurally proper manner.  As discussed later in this report, the Court has also reviewed Castro's ineffective assistance of trial and appellate counsel claim and finds it to be without merit, thereby providing no cause for the default arising from that component of his case.  The record also reflects no action or inaction by the State which prevented Castro from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43).  Having failed to show an objective cause for the default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Castro's defaulted claims are procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[32]

### D.    <u>Fundamental Miscarriage of Justice</u>

Castro may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his defaulted claims are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v.*

---

[32]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument *sua sponte* but may do so in its discretion.  *Id.*

*Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Castro does not present any claim and the record contains nothing to suggest or establish his actual innocence on the underlying conviction.  His claims instead address alleged procedural and evidentiary failings in the proceedings and not his actual innocence.  He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default.  He, therefore, has failed to overcome the procedural bar to review of these claims.

Castro's claims challenging the suggestiveness of the in-court and pretrial identification processes and the presentation of hearsay statements and identification evidence through Sergeant Dunn and the other deputies in violation of his confrontation rights (Claim Nos. 1(a), 1(c), 2(c), 9(b)) are procedurally barred and should be dismissed with prejudice.  The Court will address the substance of the remaining claims.

**V.**      **Standards of Review of the Merits of the Remaining Claims**

      **A.**      **Claims Addressed by the State Courts**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a

rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

### B.    Claim Not Addressed by the State Courts

The AEDPA's deferential standard of review applies only to claims adjudicated on the merits

by the state courts.  28 U.S.C. § 2254(d).  As previously discussed, the Court will be considering at

least one claim, if not more, that may not have been fully exhausted in or considered by the state

courts.  With respect to claims that are not adjudicated on the merits in state court, the deferential

AEDPA standards of review do not apply.  *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir.

2003).  Instead, the federal courts review those claims under the pre-AEDPA *de novo* standards of

review.  *Id*., at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo*

standard of review to ineffective assistance of counsel claims that were raised in state court, but not

adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Therefore, the Court will consider *de novo* any claim not fully exhausted in the state courts.

The Court recognizes and has utilized the appropriate standard for its review of each of Castro's

claims even if the standard is not specifically referenced in the following sections of the report.

### VI.    Confrontation Clause (Claim No. 1(b))

Castro complains that he was denied the right to confront and cross-examine Deputy Tierney,

who he claims was one of the arresting officers.  Under a very broad reading, Castro arguably claims

that Tierney could have been questioned about the inconsistent police reports and the lack of

probable cause for the arrest and the initial search and seizure.

The record reflects that, at trial, Deputy Tierney's name was mentioned as the officer who

transported Castro from the arrest scene to jail.  Tierney was not called at trial, and was the subject of side-bar scrutiny by defense counsel during trial.  Tierney had apparently been terminated from the Sheriff's Department and defense counsel unsuccessfully sought information about his termination, a request reiterated after Tierney's name was mentioned by a witness at trial.

Castro raised these confrontation clause arguments on direct appeal to the Louisiana Fifth Circuit.  The Court denied relief finding that the Sergeant Russo's reference at trial to Tierney was only to say that Tierney drove Castro to the detective bureau.  The Court noted that Russo did not testify as to any statements made by Tierney, leaving no issue of hearsay.  This was the last reasoned opinion on the issue, where the Louisiana Supreme Court denied the subsequent writ and the repetitive claim was not considered on post-conviction review by any of the Courts pursuant to La. Code Crim. P. art. 930.4(A).

Claims challenging whether a defendant's confrontation rights were violated present a mixed question of law and fact.  *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008); *Horn v. Quarterman*, 508 F.3d 306, 312 (5th Cir. 2007).  The court must determine whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  *Buckenberger v. Cain*, 471 F. App'x 405, 406 (5th Cir. 2012) (citing *Fratta*, 536 F.3d at 499).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  While the Court

declined to provide a comprehensive definition of "testimonial," it did indicate that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*, at 68.  The Court also indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.*, at 51; *see generally Bullcoming v. New Mexico*, __ U.S. __, 131 S. Ct. 2705, 2713 (2011) (defendant has the right to cross-examine the person who actually performed testing or examination of evidence); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (expert report is "functionally identical" to testimonial statement ).

In the instant case, as resolved by the state courts, Castro has not met any facet of a claim under the Confrontation Clause.  That is, Castro has not alleged nor shown that Tierney was a material witness to anything.  He also has not pointed to any statement by Tierney that was presented in the state courts that would have been subject to cross-examination had he been present. The record reflects that Tierney was only mentioned as the transport officer.  Nothing he said was presented to the jury.  In fact, Castro concedes, as was found by the Louisiana Fifth Circuit, that none of the police reports were admitted into evidence for the jury to consider.  Thus, even if those reports contained some discrepancy or statement by Tierney, the jury would not have known it and the verdict was not effected by it.

With no out of court testimonial statements at issue, Tierney does not present a confrontation clause issue.  To the extent Castro is actually challenging the propriety of his arrest and/or the search and seizure, that is a Fourth Amendment issue to be discussed later in this report.  Nevertheless, the

denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  Castro is not entitled to relief on this claim.

## VII.   Denial of Motion for Post-Verdict Judgment of Acquittal and for New Trial (Claim No. 2(a), (b))

Castro claims that the state trial court erred in denying his motions for new trial and for post-verdict judgment of acquittal both of which were based on his inability to cross-examine Deputy Tierney and access certain documents related to Tierney's termination from the Sheriff's Office. Castro also alleges that the state trial court relied on the wrong standard in determining whether the verdict was contrary to the evidence.

The issue of Deputy Tierney's termination was raised as a side issue several times in Castro's trial.  Castro claims that Tierney was terminated from the Sheriff's Office for falsifying police reports.  Castro and his counsel moved for mistrial at the close of the State's case and for relief from the verdict on this basis arguing that Tierney was involved in the arrest and was not at trial to be cross-examined, nor was Castro given access to his termination-related documents which were sealed by the Trial Court.  All of this, it was argued, played a role on the legitimacy of the arrest in light of the alleged basis for Tierney's termination.  Castro also argued that the evidence did not support the verdict of armed robbery where the identifications were suspect.  The Trial Court denied the motion indicating only that it had not sealed any documents and could not locate any order in the record sealing the documents.

On direct appeal, the Louisiana Fifth Circuit found that the Trial Court correctly denied both the motion for mistrial and the post-verdict motions.  The Court reiterated the Trial Court's finding that there was no order to seal any documents to prevent Castro from obtaining them.  The Court also found that Tierney was only referenced by the other officers as the transport officer.  These

findings were again referenced in the denial of Castro's claims raised on post-conviction review, where the state courts declined review as repetitive under La. Code Crim. P. art. 930.4(A).

Castro's arguments that the Trial Court erred in failing to grant a mistrial and post-conviction motions under state law do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review.  *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991)).  Federal habeas corpus review instead is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted); *Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue*, 131 F.3d at 506 (a disagreement as to state law is not cognizable on federal habeas review). Any alleged impropriety based on state law does not warrant federal habeas review or relief.

The Court also notes that Castro did not directly challenge the sufficiency of the evidence on direct appeal or on post-conviction review.  Instead, he claims simply that the state trial court used the wrong standard to deny his post-trial motions in which he claimed in part that the verdict

was not supported by the identification evidence and was against the weight of the evidence under Louisiana law.  Although the state trial court did not provide reasons for the denial of this portion of Castro's post-conviction motions, Louisiana law concerning review of such a claim is consistent with the constitutional standards required to protect a defendant's constitutional rights.

Under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B).  Such a motion or sufficiency claim is evaluated under a standard virtually identical to insufficient evidence claims under *Jackson v. Virginia*, 443 U.S. 307 (1979).  *State v. Durand*, 963 So.2d 1028, 1033 (La. App. 5th Cir. 2007); *State v. Jones*, 952 So.2d 705, 707 (La. App. 4th Cir. 2006) (citing *State v. Thibodeaux*, 750 So.2d 916, 926 (La. 1999)); *State v. Williams*, 891 So.2d 26, 30 (La. App. 4th Cir. 2004) (citing *State v. Brown*, 620 So.2d 508, 513-514 (La. App. 4th Cir. 1993)).  Under *Jackson*, this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).

Further, Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.  Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. Ann. § 15:438.  Louisiana's circumstantial evidence "is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under

*Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997).  The state reasonable hypothesis standard is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *Williams*, 693 So.2d at 208.

In this case, Castro has not shown that the state court's ruling on his post-trial motion was contrary to the *Jackson* standards.  Instead, he argues simply that the State's witnesses and evidence should not have been believed.  The jury heard the testimony and evidence regarding Castro's role in the robbery, including his identification by various witnesses and his confession to police.  The determination of the weight of that evidence and the credibility of those witnesses are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see Jackson*, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  No reviewing court is authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

Castro has not established that the state courts relied on any standard other than that consistent with Louisiana law and *Jackson* when denying his motions for post-verdict relief.  The

state court's resolution of the sufficiency of the evidence created a mixed question of law and fact. *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). Without some showing by Castro that the state courts' denial of relief was contrary to *Jackson*, he is not entitled to relief.

## VIII.   Access to Psychiatric Records and Police Report (Claim Nos. 3, 4(a), and 6)

Castro alleges that the State withheld copies of his psychiatric records from Pine Prairie Correctional Center ("Pine Prairie") and the narrative police report which prevented him from adequately presenting his defense and denied him due process. The first argument was presented on direct appeal and was not specifically addressed by the Louisiana Fifth Circuit. The latter claim regarding the police incident report was resolved by the Court as a matter that could be addressed through a public records request. The State now asserts that neither claim presents a basis for federal habeas relief.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court required the State to produce exculpatory and impeachment evidence for reasons of due process. *Brady*, 373 U.S. at 87. The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is favorable impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87. Claims pursuant to *Brady* involve "'the discovery of evidence after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976)). Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to

furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence). *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); *Bigby v. Cockrell*, 340 F.3d 259, 279 (5th Cir. 2003).

Three factors must be considered to evaluate an alleged *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 281-82). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

In *Kyles*, the Supreme Court extended the *Brady* ideal and held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S., at 87, 83 S.Ct., at 1196-1197) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Kyles*, 514 U.S. at 438.

A claim under *Brady* is a mixed question of law and fact. *Higgins v. Cain*, 434 F. App'x

405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)).  Under the applicable standard of review, this court therefore must determine if the state court's decision to denying relief was contrary to or involved an unreasonable application of Supreme Court precedent.

### A.      Pine Prairie Records

Castro claims that the State withheld the Pine Prairie medical records sought by his counsel. Castro's claims, as noted by the State and the state courts, is factually incorrect.  The record reflects that his counsel subpoenaed several sets of medical records including those from Pine Prairie.[33]  The records were returned to the clerk of the state court pursuant to the subpoena on April 11, 2008.[34]

The records were not withheld by the State or the state court.  The records were provided and available to Castro and his counsel in the record of the state trial court.  The prosecution was under no obligation under *Brady* to assist Castro further.  *See Marrero*, 904 F.2d at 261; *Bigby*, 340 F.3d at 279.  Furthermore, having reviewed these records, the Court is not convinced that the records are *Brady* material where they do not appear to be exculpatory or influential on the verdict.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Brady*.  He is not entitled to relief on this claim.

### B.      Police Incident or Narrative Report

Castro claims that the State withheld the police report for purposes of preventing him from investigating his defense and that the state trial court erred in refusing to assure that he received a copy.  As the State argues, and the state courts resolved, this police report was available to Castro and his counsel through a public records request.

---

[33]St. Rec. Vol. 1 of 9, Request for Subpoena (Pine Prairie), 3/17/08; Subpoena (Pine Prairie), 3/25/08.

[34]St. Rec. Vol. 5 of 9, Pine Prairie Records, 4/11/08.

Furthermore, Castro has not established that the report he seeks constituted *Brady* or *Kyles* material. Although he claims that there were discrepancies in the various police reports, he has never produced any report to demonstrate or support this conjecture and no reports were introduced into evidence at trial. The state appellate court noted this in its decision denying relief. He also has not shown how the report he seeks was material or how it would have altered the finding of guilt.

Again, Castro has failed to prove that the state courts' denial of relief on this issue was contrary to or an unreasonable application of *Brady*. He is not entitled to relief on this issue.

## IX.    Unlawful Arrest, Search, and Seizure (Claim Nos. 4(b) and 5)

Castro complains that the State failed to prove that there was probable cause for his arrest or for the searches that led to the seizure of the evidence used against him at trial all in violation of the Fourth Amendment. He claims, therefore, that the evidence should have been suppressed. The State argues that this federal court need not review Castro's Fourth Amendment claims under the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).

It is well settled that Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone*, 428 U.S. at 480-81. In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494 (footnotes omitted); *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994). This rule applies to all claims arising under the Fourth Amendment. *See*, *e.g.*, *Cardwell v. Taylor*, 461 U.S. 571, 572 (1983) (arrest); *Williams*, 16 F.3d at 637-38 (search and seizure).

A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the

factfinder and at least the availability of meaningful appellate review by a higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).  The United States Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."  *Caver*, 577 F.2d at 1192.  "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*."  *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful.  *Janecka*, 301 F.3d at 320-21.  Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone* bar to apply.  *Id*. at 320.

The Fifth Circuit also has held that the *Stone* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978); *Woodard v. Thaler*, 702 F. Supp.2d 738, 759-60 (S.D. Tx. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*, 450 F.3d 158,

34

167 (5th Cir. 2006)).  Even when the state courts err in the disposition of the Fourth Amendment claim on procedural grounds, the *Stone* bar still applies "with equal force."  *Williams*, 609 F.2d at 219-20.

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on their merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims."  *Williams*, 609 F.2d at 220; *see also Janecka*, 301 F.3d at 321 (same).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.  The petitioner has not met this burden.

Castro does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  On the contrary, he recognizes that his Fourth Amendment claims were addressed during the pretrial proceedings in state court and on direct appeal.  He therefore has not alleged or demonstrated that Louisiana state courts routinely or systematically preclude such litigation.  Moreover, this Court has recognized that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting referenced report and recommendation).

Castro challenged his arrest, the search, and the seizure of the evidence in a pretrial motion

to suppress.  After a full hearing on the motion on August 28, 2008, the Trial Court denied the motion.[35]  Castro raised the same probable cause challenges on direct appeal, and relief was again denied.  The courts declined to consider the repetitive claim on post-conviction review.

The record, therefore, demonstrates that Castro was provided with the opportunity to present his Fourth Amendment claims to the state courts, although his efforts were unsuccessful.  After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted).  The fact that Castro disagrees with the state courts' decision to deny relief is not sufficient to overcome the *Stone* bar to federal habeas corpus review.  *Janecka*, 301 F.3d at 320-21.  The review of the issue at all levels of the state courts was sufficient to meet due process requirements and to prohibit review of his Fourth Amendment claims in this federal court.  He is not entitled to habeas relief on this issue.

## X.    Testimony of Sergeant Dunn (Claim No. 7)

Castro argues that the State knowingly allowed Sergeant Dunn to testify falsely that he was the arresting officer to hide the fact that Deputy Tierney was the real arresting officer who had been fired for filing false police reports.  Castro did not present this claim on appeal or post-conviction review to the state courts as a claim of prosecutorial misconduct through the use of perjured testimony.  Castro's prior references to Sergeant Dunn's testimony was subsumed within his hearsay testimony arguments and challenges to his inability to cross-examine Tierney, claims previously disposed of in this report.  In its response, the State addresses Castro's argument in the same vein

---

[35]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, 8/28/08; St. Rec. Vol. 5 of 9, Motion Hearing Minutes, 8/28/08.

as it was presented in the state courts on direct appeal.  This Court considers the prosecutorial misconduct claim *de novo* as an unexhausted issue.

A State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150, 766 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, a defendant must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  *Duncan v. Cockrell*, No. 02-20901, 2003 WL 21545926, at*3 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).  False evidence is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  *Duncan*, 2003 WL 21545926, at*3 (citing *Nobles*, 127 F.3d at 415).

Castro has not established that Sergeant Dunn's testimony was actually false in any regard. Sergeant Russo testified that Tierney was the deputy who transported Castro to the detective bureau and who was present when he read Castro his rights.[36]  Dunn and Russo took credit for the arrest, the searches, and the interrogation.  There was never any testimony or evidence that Tierney was the arresting officer.  Castro and his counsel misstated the testimony given by Russo in that regard. Castro has failed to point to anything that would have given the prosecutor reason to consider Dunn's testimony to be false.

The State in fact made the disclosure about Tierney to counsel and the Trial Court and did not encourage false testimony.[37]  The District Attorney, Castro's counsel, and the Trial Court knew that Tierney was only the transport officer and was not the arresting officer or authorized to prepare

---

[36]St. Rec. Vol. 7 of 9, Trial Transcript, p. 33, 35 (Russo), 4/1/09.

[37]<u>Id</u>., p. 4.

a separate police report.  The information also was not material because, even if Tierney did prepare his own report in Castro's case, it was not admitted into evidence or presented to the jury.  As already noted, no police reports were admitted at trial.  The jury instead was presented with the witness testimony, the surveillance pictures, and Castro's confession on which to base there verdict.

Castro has offered nothing to support his claim that Dunn's or Russo's testimony was false or that the State suborned false or perjured testimony.  He has failed to prove any of the three elements required to demonstrate a due process violation.  He is not entitled to relief on this claim.

## XI.   Coerced Confession (Claim No. 8)

Castro claims that his confession should not have been admitted at trial because it was coerced and the State failed to prove that it was free and voluntary.  As noted by the State, Castro does not explain in his petition how or why the confession was coerced.

Castro also presented no basis for the same claim on direct appeal to the Louisiana Fifth Circuit.  The Court denied relief on the claim noting generally that, based on the testimony at the suppression hearing and trial, it was within the Trial Court's discretion to allow the statement into evidence.  The Louisiana Supreme Court denied Castro's subsequent writ application without additional reasons.

Castro challenged the voluntariness of his confession again in his application for post-conviction relief, this time referencing his trial testimony where he claimed to be beaten by Sergeant Russo and intimidated by the fact that he was handcuffed to a chair during his interview.  The Trial Court and the Louisiana Fifth Circuit denied relief finding the claim to be repetitive under La. Code Crim. P. art. 930.4(A).  The Louisiana Supreme Court also summarily denied the related writ application.

38

The issue of the voluntariness of a confession is a mixed question of law and fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). The state court's related factual determinations are presumed to be correct and are overturned only if they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U .S.C. § 2254(d)(2); *Barnes*, 160 F.3d at 222.

For the waiver of one's rights to be voluntary, the court must determine whether it was the product of intimidation, coercion, or deception and if it was made with full awareness of the accused's constitutional rights. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are also entitled to deference when supported by the record. *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997). *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also Miller*, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness). Further, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. *Pemberton*, 991 F.2d at 1225 (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

In deciding the legitimacy of the inculpatory statement made by Castro, the Trial Court heard testimony at both the suppression hearing and at trial. On both occasions, Sergeant Russo testified that he advised Castro twice of his rights while they were at the detective bureau and two advise of

rights forms were completed.[38]   The first form was completed under the name Manuel Castro, petitioner's brother, the name Castro falsely provided to the officers at the scene and again at the bureau.[39]  Sergeant Russo had Castro complete the second form after he finally corrected his name.

Castro acknowledged his ability to understand the English language and each of the rights he was waiving.[40]  In fact, Sergeant Russo testified that Castro told him he could speak English and had gone to school in the United States.[41]  The Sergeant also had Castro read each line of the form out loud as he initialed them to assure that he could read and write in English.[42]  In addition, at the end of the interview, included in the recorded statement, the Sergeant reviewed the waiver of rights form with Castro and Castro again confirmed his ability to understand English and the waiver of his rights.[43]   Castro also identified himself on the surveillance video and in the other police photographs.[44]  The Sergeant denied using any force, threats or coercion to get Castro to sign the waiver or make the inculpatory statement.[45]

There is no doubt that at trial Castro gave quite a different version of the events than he did

---

[38]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, pp. 36, 39-40, 8/28/08; St. Rec. Vol. 7 of 9, Trial Transcript, pp. 35, 37, 4/1/09.

[39]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, pp. 36, 39-40, 8/28/08; St. Rec. Vol. 7 of 9, Trial Transcript, p. 35-36, 4/1/09.

[40]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, pp. 37, 39-40, 8/28/08; St. Rec. Vol. 7 of 9, Trial Transcript, p. 35, 4/1/09.

[41]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, pp. 37, 8/28/08.

[42]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, pp. 38, 39-40, 41, 8/28/08; St. Rec. Vol. 7 of 9, Trial Transcript, pp. 35, 36, 38, 4/1/09.

[43]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, p. 43, 8/28/08.

[44]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, p. 44, 8/28/08; St. Rec. Vol. 7 of 9, Trial Transcript, p. 43, 4/1/09.

[45]St. Rec. Vol. 6 of 9, Motion Hearing Transcript, p. 39, 8/28/08; St. Rec. Vol. 7 of 9, Trial Transcript, p. 43, 4/1/09.

at the detective bureau.  In his narrative response to his counsel's direct examination, Castro first claimed that he signed the photographs to identify himself only after Russo threatened him.[46]  He claimed that he asked for a lawyer and Russo told him he had to sign the papers first.  He claimed that he could not read English and signed the papers and pictures after Russo read something.[47]

Castro also testified that Russo threatened to arrest his girlfriend for helping him in the robbery, of which he denied being a part.[48]  Castro went further to claim that Russo stood up from the interview table and "knocked me on the top of my head a couple of times."[49]  Castro testified that Sergeant Russo threatened to continue hitting him on the head if he did not record a confession. Castro insisted that this was true even though his booking pictures showed no injuries.[50]  Castro went so far as to testify that Russo stopped and started the tape to make sure Castro said what Russo needed him to say in the statement.[51]

In response to his counsel's question, Castro was unsure and all but denied that it was his voice on the tape that was played for the jury.[52]  On cross-examination, Castro was unable to explain why the tape contained some information that would not have been beneficial for police if his story had been coached by Russo.[53]  He also conceded during the taped statements that he read and

---

[46]St. Rec. Vol. 7 of 9, Trial Transcript, pp. 97, 104, 4/1/09.

[47]*Id.*, pp. 97, 104.

[48]*Id.*, pp. 97-98.

[49]*Id.*, pp. 98, 115.

[50]*Id.*, p. 116.

[51]*Id.*, p. 100.

[52]*Id.*, pp. 100-01.

[53]*Id.*, pp. 116-18.

initialed each line of the waiver of rights form.[54] He later acknowledged that he may have identified himself in the photographs before any threats were made by Russo.[55]

As determined by the Louisiana Fifth Circuit, based on the testimony at both proceedings, "the trial court was free to accept the testimony of police officers over that of Castro."[56]  Castro's self-serving and often conflicting recollection of the interview process simply was not persuasive to the state trial court, or the jury.  These findings and credibility determinations are supported by the record and are not subject to further scrutiny by this federal court on habeas review.

Based on the record, the state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.  Castro is not entitled to relief on this claim.

## XII.   Denial of Psychiatric Expert (Claim No. 9)

Castro alleges that he was denied the right to psychiatric assistance for the defense.  The State argues simply that he was not entitled to state funding for psychiatric assistance because he did not enter a plea of not guilty, not guilty by reasons of insanity.

Castro argued this same claim on direct appeal.  Construing the claim as a challenge to the denial of his pretrial motions for funding and as a claim of due process, the Louisiana Fifth Circuit denied relief finding that Castro had no right to state funding without an insanity plea and no due process right to a psychiatrist under federal law where his sanity at the time of the offense was not at issue.  The Louisiana Supreme Court denied the related writ application.

On post-conviction review, the state trial court and the Louisiana Fifth Circuit denied relief

---

[54]*Id.*, p. 118.

[55]*Id.*, p. 122.

[56]*Castro*, 40 So.3d at 1044.

finding the claim to be repetitive of the claim addressed on appeal, citing La. Code Crim. P. art. 930.4(A).  The Louisiana Supreme summarily denied Castro's writ application without reasons.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the United State Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake*, 470 U.S. at 83.  However, an indigent defendant does not have an automatic right to expert assistance upon demand.  *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."  *Id.*; *Griffith v. Quarterman*, No. 05-70049, 2006 WL 2041291, at *5 (5th Cir. Jul. 21, 2006).

A defendant's entitlement to state funded psychiatric expert is a matter of due process, which presentes a mixed question of law and fact.  *Ake*, 470 U.S. at 83-84; *Stumpf v. Robinson*, 722 F.3d 739 (6th Cir. 2013) (due process issues present a mixed question of law and fact under the AEDPA); *see also*, *Hood v. Cockrell*, 72 F. App'x 171, 181-82 (5th Cir. 2003).  The question before this Court is whether denial of relief on this issue was contrary to or an unreasonable application of federal law.

Castro suggests that he should have received funding to hire or appointment of an independent psychiatrist to aid in his defense.  He, however, does not indicate exactly how a psychiatrist would have aided in his ability to present his defense.  He also has not presented to this court, or to the state courts, anything to suggest that his mental competence was truly at issue and the State did not place his competence at issue, a fundamental premise under *Ake*.

43

Furthermore, the *Ake* court specifically held that a defendant is <u>not</u> entitled "to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Ake*, 470 U.S. at 83. Instead, the *Ake* Court determined that the indigent defendant only has the right to have access to a competent psychiatrist. *Id.* As pointed out by the State, Castro was given this access by means of the psychiatrists forming the sanity commission. After prolonged evaluation, the sanity commission resolved that Castro was feigning mental health issues, malingering, and was quite able to speak and understand English and to assist in his own defense.[57] The fact that Castro disagreed with the commission's resolve that he was competent does not create a cognizable habeas corpus issue under *Ake*. *See*, *Sidebottom v. Delo*, 46 F.3d 744, 753 (8th Cir. 1995).

Thus, it is not enough for Castro to suggest that he was somehow entitled to his own psychiatrist. As noted above, *Ake* does not provide such a right. Instead, Castro is required to establish a reasonable probability that another psychiatrist would have aided the defense and that the lack of one rendered his trial unfair. He has not here met that burden, nor did he do so in the state courts. The record demonstrates that there was nothing compelling before the Trial Court at anytime which would have entitled Castro to the assistance of another psychiatrist or psychiatric expert to assist in his defense. Where there is "little more than undeveloped assertions that the requested assistance would be beneficial," a defendant is not denied due process by the trial court's denial of the requested expert assistance. *See Caldwell v. Mississippi*, 472 U.S. 320, 322 n.1 (1985).

The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Castro is not entitled to relief on this claim.

---

[57]St. Rec. Vol. 5 of 9, Letter from Commission, 1/16/08.

**XIII.   Inadmissible and Irrelevant Evidence (Claim Nos. 10 and 11)**

Castro complains that the Trial Court erred in allowing inadmissable and irrelevant evidence to be admitted at trial.  He does not identify the evidence to which he refers.  As noted by the State, when these issues were raised in his direct appeal, Castro argued that the Trial Court should not have allowed the items seized from his home, i.e. the watch, the sweat pants, and the B.B. gun, to be admitted at trial where there were not relevant to the offense.  Castro also argued on appeal that the Trial Court erred in allowing a redacted copy of the Times Picayune article about the robbery to be placed into evidence instead of the original.

The Louisiana Fifth Circuit denied relief finding that the items seized from his home were proven to be relevant based on the statements and testimony of the witness and the correlating photographic evidence.  The Court also found no error in the admission of the newspaper article that was redacted and copied to delete the name of a non-testifying witness who also identified Castro in the photograph accompanying the article.  The Louisiana Supreme Court summarily denied the subsequent writ application.  Castro's efforts to reassert these claims on post-conviction review were barred as repetitive at each level of the state courts.  *Ylst*, 501 U.S. at 802.

Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010); *Lampton v. Cain*, 268 F. App'x 367, 368 (5th Cir. 2008) (citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992)).  States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.  *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. Texas*, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the

proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of the St. of Ca.*, 314 U.S. 219, 236-37 (1941)); *see Swarthout*, 131 S. Ct. at 861-62 (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are <u>not</u> cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Thus, to the extent Castro bases his claim on Louisiana law, he has failed to state a cognizable claim for this Court to review.  To the extent Castro also embraces general references to due process and fundamental fairness, his claim does not support a basis for federal habeas relief.

The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).  Under the applicable AEDPA standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

In *Lisenba*, the Supreme Court stated that the denial of due process "is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."  *Lisenba*, 314 U.S. at 236.  In keeping with

this principle, the United States Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief <u>only</u> if it is "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (quotation omitted); *Givens v. Cockrell*, 265 F.3d 302 (5th Cir. 2001); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

Castro has not established that any of the noted evidence was inadmissible, prejudicial or admitted in violation of the Due Process Clause. As determined by the state courts, all of the items seized from his home were relevant and tied to the crime as evidence identified by the witnesses or Castro himself and identifiable in the photographs of Castro during the robbery. As for the redacted Times Picayune photograph, the record reflects that it was redacted to avoid prejudice to Castro. As the state courts reiterated several times, the redacted copy, rather than the original, was used so that the State could remove an identification made by a witness who did not testify at trial. The evidence was submitted to the jury in that state to avoid prejudice, not to cause it.

Without some showing of inadmissibility or prejudice, Castro "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial. *See Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993); *see also Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. Beck is not entitled to relief on this claim.

## XIV.   Denial of an Interpreter (Claim No. 12)

Castro claims that the trial court erred when it denied his request and failed to provide him with an interpreter to assist him if he became confused during his testimony at trial. He alleges that he could not effectively communicate with his counsel or understand the proceedings against him.

The State alleges that the record demonstrates that Castro could and did understand the proceedings and communicated quite well with his counsel and the state courts.

Castro raised this issue on direct appeal and the Louisiana Fifth Circuit resolved that the record established that Castro had the ability to read, write, speak, and understand the English language and found no error in the Trial Court's ruling, which was not objected to by counsel.  On post-conviction review, the claim was denied as repetitive.

Louisiana law provides that the appointment of a foreign language interpreter, based on the defendant's showing of inability to understand the proceedings in English, is within the sound discretion of the trial court.  *State v. Lopes*, 805 So.2d 124, 128 (La. 2001).  In exercising this discretion, La. Code Crim. P. art. 25.1 allows the court to appoint an interpreter for a non-English-speaking person who is a principal or witness in a proceeding before a court after consulting with the person and his counsel.  *State v. Santos*, 40 So.3d 167, 172-173 (La. App. 5th Cir. 2010).  Nevertheless, to the extent Castro argues that the state courts' denial of access to an interpreter at trial violated Louisiana law, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  *Wilkerson*, 16 F.3d at 67 (quotation omitted); *see also Swarthout*, 131 S. Ct. at 861.  As noted above, habeas corpus review is limited to matters of federal law as determined by the United States Supreme Court.

However, "[t]he United States Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional one."  *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012).  The Supreme Court long ago held that the appointment of an interpreter "is a matter largely resting in the discretion of the trial court."  *Perovich v. United States*, 205 U.S. 86, 91 (1907); *accord Johnson*, 248 F.3d at 663;

*Suarez v. United States*, 309 F.2d 709, 712 (5th Cir. 1962).  When the Supreme Court has not recognized a constitutional rule, then there is "by definition" no "clearly established" federal law to be applied by the state courts in addressing the claim.  *White*, 134 S. Ct. at 1706.

In this case, Castro has failed to establish that the denial of access to an interpreter was contrary to any established Supreme Court law.  For that matter, he has never shown that he was prejudiced without an interpreter or that he ever needed an interpreter.  As noted by the state courts on several occasions, the record is replete with instances demonstrating his ability to communicate, write, understand, and at times manipulate, the English language.

Nevertheless, as a fundamental matter, Castro has failed to present a cognizable federal claim.  The state courts' denial of relief on this issue was not contrary to Supreme Court law, especially where no such law exists.  Castro is not entitled to relief on this claim.

## XV.   Failure to Review *Brady* Claims on Direct Appeal (Claim No. 13)

Castro alleges that the Louisiana Fifth Circuit erred in failing to address his claim that the District Attorney withheld the Pine Prairie records in violation of *Brady*.  The State contends that, since relief was denied on the entirety of the appeal, this federal court can presume that the *Brady* claims were denied for lack of merit.

Once again, this federal court does "not sit as [a] 'super' state supreme court" to review the specific language used, *vel non*, by a state court in denying relief on a claim.  *Wilkerson*, 16 F.3d at 67; *Swarthout*, 131 S. Ct. at 861.  This Court's role is to determine whether the denial of relief was consistent with federal law.  Castro's claim is based on the state court's failure to provide reasons for denying his *Brady* issue on direct appeal.  As an initial matter, there is no state law requirement that written reasons must be provided to support such a court ruling, and Castro has cited none.

49

More importantly, Castro's argument fails to assert a federal constitutional claim cognizable on habeas review.  Although Castro clearly would have preferred a detailed explanation as to why his claim was rejected by the state trial court, the Supreme Court has not decreed that the federal constitution requires that any court satisfy such desires.  *Accord White*, 134 S. Ct. at 1706 (a ruling can not be contrary to federal law if the Supreme Court has not established a standard on that point).  On the contrary, federal law does not require reasoned or written judicial opinions.  *See*, *e.g.*, *Taylor v. McKeithen*, 407 U.S. 191, 194 n.4 (1972); *White v. Scott*, No. 97-6258, 1998 WL 165162, at *1 (10th Cir. Apr. 9, 1998); *King v. Champion*, 55 F.3d 522, 526 (10th Cir. 1995); *Furman v. United States*, 720 F.2d 263, 264 (2nd Cir. 1983); *United States v. Baynes*, 548 F.2d 481 (3rd Cir. 1977); *Jones v. United States*, No. 88CIV3999, 1990 WL 6566, at *3 (S.D.N.Y. Jan. 24, 1990).

The administration of justice is rarely perfect, and all actions of state courts do not infringe on due process.  Due process concerns are implicated only when the State fails to assure a criminal defendant adequate notice of the charges and an opportunity to present his claims before final determination on the merits.  *Evitts v. Lucey*, 469 U.S. 387, 401, 405 (1985).  That is not the case here.  Castro does not contend and has not shown that he was denied adequate review of his appellate claims under either state or federal law.  Having failed to present a cognizable federal claim or to show that the decisions or actions of the state courts were contrary to or an unreasonable application of any federal law as defined by the Supreme Court, Castro is not entitled to relief on this claim.

## XVI.   Judicial Conflict of Interest and Error (Claim Nos. 14 and 15)

Under a broad reading, Castro suggests that a conflict of interest was created when the original trial judge, Judge Melvin Zeno, was replaced after his retirement by Judge Lee Faulkner,

Jr., who presided over the trial.  As the State indicates, this claim apparently arises from Castro's claim that Judge Faulkner erred in allowing the two officers to make reference to Deputy Tierney when Tierney's records were sealed by the Court and the Court had already granted the motion in limine to prevent any witness from referencing a non-testifying witnesses.

When this issue was addressed by the Trial Court at trial, Judge Faulkner resolved that he had never ordered that Tierney's records be sealed nor did the record contain any order sealing the documents.  The Trial Court, and the appellate court later on direct appeal, also resolved that Dunn and Russo did not introduce any prohibited hearsay information.  The Louisiana Supreme Court also denied relief.  The state courts each denied relief on post-conviction review finding the claim to be repetitive.  *Ylst*, 501 U.S. at 802.

As already addressed several times, this Court does not sit to consider matters of state law or determine the propriety of state court rulings under state law.  *Wilkerson*, 16 F.3d at 67; *Swarthout*, 131 S. Ct. at 861.  This Court can locate no Supreme Court precedent that would prohibit a state court from reassigning trial judges.  This act alone does not present a cognizable constitutional issue or invoke federal habeas scrutiny.

The Court also notes that Castro has failed to establish to any court that the factual resolves of the state courts were incorrect.  Castro has not demonstrated that either Judge Zeno or Judge Faulkner ever signed an order sealing Tierney's records.  Thus, the factual premise of his claim is unsupported.

To the extent Castro may claim under a broad reading that Judge Faulkner demonstrated some bias towards him or his defense, his claim also fails under federal law.  Most questions concerning a judge's ability and qualifications to hear a case are not constitutional ones.  *Buntion*

*v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008).  However, "the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (quotation and citation omitted); *Buntion*, 524 F.3d at 672; *see Samuel v. Warden, Avoyelles Corr. Ctr.*, 51 F. App'x 483 (5th Cir. 2002).

Two presumptions way in favor of finding that a judicial officer properly discharged their duties fairly and impartially: "'(1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest.'" *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052-53 (5th Cir. 1997)).  On the other hand, there are three situations in which presumptive bias has been found: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-maker has the dual role of investigating and adjudicating disputes and complaints.  *Bigby*, 402 F.3d at 559.

To secure habeas relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." *Id*., at 559 (citing *Liteky v. United States*, 510 U.S. 540, 552 (1994)).  There must be an appearance of impropriety which rises to the level of a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, habeas relief is not cognizable.  *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990).

Castro fails to present any basis for this Court to question Judge Faulkner's integrity much less to find a presumptive bias.  Castro has never claimed or proven that Judge Faulkner had any interest in the outcome of the case, was targeted by either side, or ever acted as an investigator or

held a dual role in the case at anytime.  The Court recognizes that Castro claims that the Trial Court erred and prejudiced him by recessing during his testimony and in refusing to allow him to continue to testify after the break.  Once again, the record does not support the factual basis of Castro's claim.

The record instead demonstrates that, contrary to his counsel's advise, Castro testified on his own behalf at trial.  After his lengthy diatribe of the events as he believed them to be, his counsel tendered him to the prosecutor for cross-examination.[58]  At no time during Castro's direct examination did the Trial Court take a break or interrupt his testimony accept to address objections.[59]

During cross-examination, Castro in part testified that the deputies planted evidence at the scene to make it look like he had more money in his pocket than he did.[60]  Castro's counsel interrupted and asked for a five minute recess, a request that was granted after an off the record discussion at the bench.[61]  When Castro returned to the witness stand, the prosecutor continued her questioning on the exact same subject line regarding the amount of money he had versus that located at the scene.[62]

Her questioning continued for quite some time, until the prosecutor announced that she had no further questions.[63]  Defense counsel also indicated that she had no questions.[64]  When the Court

---

[58]St. Rec. Vol. 7 of 9, Trial Transcript, p. 105, 4/1/09.

[59]*Id.*, pp. 91-105.

[60]*Id.*, p. 108.

[61]*Id.*, pp. 108-09.

[62]*Id.*, pp. 109.

[63]*Id.*, pp. 109-125.

[64]*Id.*, p. 125.

told Castro to step down, Castro stated he had more he wanted to say.[65]  The Court told him there were no more questions from counsel and that he had to step down.  Castro complied.

Contrary to Castro's allegations, the Trial Court did not at anytime interrupt or refuse to allow his testimony to continue.  He was released only after both the State and his own counsel advised the Court that questioning was complete.  Castro has not shown any adverse or prejudicial action by the Court that would demonstrate any prejudice or denial of a fair trial by the Trial Court.

Once again, Castro has failed to present a cognizable federal claim.  The denial of relief on this issue was not contrary to any Supreme Court precedent.  Castro is not entitled to relief on this claim.

## XVII.  Effective Assistance of Counsel (Claim Nos. 16 and 17)

Castro alleges that his trial and appellate counsel provided ineffective assistance during the state court proceedings on several grounds already enumerated and to be discussed here.  The State in response argues that Castro has not met the standards set forth in, or established that the denial of relief was contrary to or an unreasonable application of, *Strickland*, 466 U.S. at 668.

On direct appeal, Castro argued that the attorney temporarily appointed to his case was ineffective in failing to communicate with him and prepare for trial.  He also argued that appellate counsel erred in failing to raise more than just an excessive sentence on appeal.  The Louisiana Fifth Circuit denied relief on these issues under the standards set forth in *Strickland*.  The Court resolved that the challenge to interim counsel was essentially moot since that attorney was replaced and no challenges were made to the performance of his actual trial counsel.  In addition, the Court also found that Castro failed to identify any issues that should have been raised by appellate counsel and

---

[65]*Id.*, p. 126.

54

therefore failed to establish a deficiency or prejudice.  The Louisiana Supreme Court summarily denied the related writ application.

On post-conviction review, Castro re-urged his claim against appellate counsel and alleged that trial counsel was ineffective for failing to obtain an interpreter for trial, adequately challenge the identifications made by various witnesses, raise or pursue an insanity defense, and secure his psychiatric records before trial.  He also suggested that the State interfered with counsel when the defense was denied access to Deputy Tierney's records at trial.  The Trial Court denied relief under *Strickland* noting that most of the claims against counsel were related to alleged trial errors already found to be meritless.  The Louisiana Fifth Circuit and the Louisiana Supreme Court also denied relief relying on these reasons.  *Ylst*, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan*, 980 at 296.  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

55

*Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty*, 583 F.3d at 258.  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

56

*Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 131 S. Ct. at 792.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington*, 131 S. Ct. at 788.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles*, 556 U.S. at 123). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

## A.   Trial Counsel

Castro presents eight alleged errors by his trial counsel: (a) counsel failed to secure a Spanish translator at trial; (b) counsel failed to (i) cross-examine Officer Tierney on the lawfulness of the search and seizure, (ii) cross-examine Hartford about the reliability of his identification of petitioner, (iii) secure a line-up for Guy to identify the petitioner, and (iv) prepare a defense or plea bargain for a plea of not guilty by reason of insanity, and (v) the State interfered with his right to effective assistance when the Trial Court denied counsel's side-bar request for Tierney's personnel information, (vi) counsel's errors were not matters of trial strategy, and (vii) counsel failed to secure the psychiatric records after issuing a subpoena.

As an initial matter, Castro has again based at least part of his claim on factual error. The record is quite clear that Castro's counsel did attempt to have a Spanish translator assist Castro at trial. Castro concedes that both trial judges determined that he was not in need of a court appointed interpreter because of his proficiency with the written and oral English language. Before Castro took the stand, he and his counsel advised the Court that the defense had secured the assistance of a translator to work with Castro if needed.[66] When Castro's chosen interpreter appeared, she refused

---

[66]St. Rec. Vol. 7 of 9, Trial Transcript, p. 83, 4/1/08.

to be sworn regarding the truthfulness of her translations to Castro.[67]  The Court did not refuse to allow the interpreter to remain in the courtroom, the Court only noted that it would be the defense's choice to proceed with an unsworn interpreter.[68]  The Court instructed counsel to proceed with her questioning of Castro and if he needed assistance, they could call upon the translator.  A reading of the transcript reflects that Castro at no time asked for a translation or interpretation during his testimony.

The record therefore demonstrates that Castro's counsel did have an interpreter standing by at trial during his testimony.  Castro has not presented any support for his claim that counsel failed to secure a translator.  In addition, the Trial Court already repeatedly denied requests for a court appointed interpreter based on Castro's actions, writings, and clear ability to communicate in English.  Counsel was under no professional obligation to continue to pursue a meritless request that a translator be appointed for trial.  *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *see also*, *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).  Relief on this claim was properly denied by the state courts.

Castro next claims that his counsel was deficient in failing to cross-examine Deputy Tierney on the lawfulness of the search and seizure.  Castro basis this claim on yet another factual error.

---

[67]*Id.*, p. 89.

[68]*Id.*, p. 91.

Contrary to his assertions, and the misunderstanding by his trial counsel, at no time did any witness or officer ever indicate that Deputy Tierney was the arresting officer or that Deputy Tierney could speak to the veracity of the searches and seizures connected to his arrest. Furthermore, the record is clear that the officers actually involved in the search of the vehicle and the home were cross-examined by defense counsel. Counsel was able to review the relevant warrants, consent forms and question both Dunn and Russo at the suppression hearing and at trial to attempt to challenge the validity of the searches.

Castro has failed to present anything other than his unsupported conjecture that any benefit would have come from questioning Deputy Tierney about searches that occurred while he was driving Castro to the detective bureau. Castro has failed to point to any deficiency in counsel's performance or resultant prejudice. Relief on this claim was properly denied by the state courts.

Castro also alleges that his trial counsel should have cross-examined Hartford about his identification and compelled a line-up for Guy to identify him in a less suggestive way at trial. Castro, however, fails to indicate what counsel should have asked or how his defense would have benefitted from this additional questioning. Castro has not shown any reason for a court to discredit or question Hartford's identification. As for Guy, her in court identification was made after she had already described Castro to police and identified his pictures. Counsel had no legal basis to prevent Guy from making an in court identification.

Furthermore, Castro had in fact confessed to the commission of the crime and identified himself in the video and still-shot. Counsel could reasonably believe that any additional questioning about the identifications, or request for more demonstrative identifications, would not have benefitted the defense and instead would have further confirmed that Castro was the perpetrator.

60

This type of trial strategy is not to be second guessed on collateral review.

Castro also suggests that his counsel was deficient in failing to prepare an insanity defense or pursue a plea bargain for a plea of not guilty, not guilty by reason of insanity.  In connection with this, Castro also claims that counsel erred in failing to secure his mental health records from Pine Prairie.  A habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).  Castro has provided no basis to undermine the deference due his counsel's trial decisions or the denial of relief on this issue by the state courts.

In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense.  La. Rev. Stat. Ann. § 15:432.  To rebut the presumption of sanity and avoid criminal responsibility, a defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence.  La. Code Crim. P. art. 652.  The defense of insanity is defined under Louisiana law in La. Rev. Stat. Ann. § 14:14:

> If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

> Under Louisiana law, "[c]riminal responsibility is not negated merely by the existence of a

mental disease or defect . . ..." *State v. Williams*, 346 So.2d 181, 186 (La. 1977).  A mental disease or disorder short of legal insanity is insufficient to support an insanity defense.  *Id.*; *see also*, *State v. Koon*, 704 So.2d 756, 768 (La. 1997); *State v. Weber*, 364 So.2d 952, 956 (La. 1978). Furthermore, under Louisiana law, voluntary drug use during the commission of a crime also does not necessarily exempt the offender from criminal responsibility.  La. Rev. Stat. Ann. § 14:15(2).[69]

Castro has never alleged that he was legally insane at the time of the offense.  He simply suggests that his prior prison medical records contained evidence of prior mental health issues.  That would not be enough to meet the heavy burden of proving legal insanity.

In addition, Castro has not alleged to any court what exactly in his past would have convinced his counsel or the state courts that he was legally insane at the time of the offense under the standards set forth above.  He has never indicated that he was "incapable of distinguishing between right and wrong" when he robbed the bank.  In his confession to police, which was played for the jury, he made clear that he robbed the bank because he lost his job and needed money.  Even then, he did not express any mental health issues that would have impaired his ability to understand his actions.

Even at trial, Castro's testimony never broached the subject of his alleged depression or mental disorders.  Instead, Castro testified that he found the money and spent it.  If this was the defense he chose to present, then there was no reason for his counsel to have pursued an insanity defense.  In other words, if Castro's defense was that he was never in the bank and did not commit

---

[69]La. Rev. Stat. Ann. § 14:15 provides as follows:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows: . . .
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.

the robbery, counsel had no basis to argue that Castro did not know right from wrong when he robbed the bank. Counsel would have had no reason to raise a baseless defense to a crime Castro did not commit.

Based on these considerations, combined with the fact that the sanity commission deemed Castro to be malingering and essentially faking mental disorder, counsel acted reasonably in deciding not to pursue an insanity defense. This decision was well within reasonable trial strategy and does not represent deficient performance.

Castro further claims that the State interfered with his right to effective assistance of counsel when the Trial Court denied counsel's side-bar request for information about Tierney. For the reasons previously addressed in this report, Castro has not shown that the State or the Trial Court denied him access to Tierney's records. In addition, and most importantly here, Castro has not established that Tierney played a role, much less a significant one, in his arrest or the search and seizure. He has not shown that counsel's failure to access those records resulted in any prejudice to his defense, or that the verdict would have been different. Without such a showing, he has not established that his counsel was deficient or that the State interfered with his Sixth Amendment rights in any way.

Finally, Castro claims that his trial counsel's errors, as he has presented them, were not matters of trial strategy but instead warrant more in depth scrutiny. Castro did not present this argument to the state courts. This Court has reviewed Castro's assertions against his counsel under the *Strickland* standards to determine the deference due counsel's decisions and the state courts' denial of relief on the underlying claims of ineffective assistance. In certain instances as indicated, the issues were matters of trial strategy.

For example, "the presentation of testimonial evidence is a matter of trial strategy." *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (*quoting Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). Here, Castro repeatedly suggests that counsel should have presented testimony or pursued cross-examination differently. Her decisions in that regard are trial strategy, due the appropriate deference under *Strickland* and its progeny.

In addition, the federal courts have long recognized that the "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" (brackets in original) *Williams v. Cockrell*, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)). Counsel is given great deference in deciding not to call a witness who may have testified differently than anticipated or whose testimony would have been cumulative. *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted) ("Where the prosecution's case is less than compelling . . ., the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony.")

Such decisions by counsel are part of recognized trial strategy. The fact that the strategy was not successful, i.e. the jury did not believe Castro's version of the events or his defense as a whole, does not render counsel's performance constitutionally deficient. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted). Castro has provided no basis to

64

undermine the deference due his counsel's trial tactics and strategy.

For all of the foregoing reasons, Castro has failed to prove ineffective assistance of counsel under *Strickland* or that denial of relief on those claims presented to the state courts was contrary to, or an unreasonable application of, *Strickland*.  He is not entitled to relief on these claims.

**B.      Appellate Counsel**

Castro alleges that his appellate counsel was disinterested in his case and erred in failing to peruse the record to raise more issues on appeal, specifically those issue he raised *pro se* on appeal and later on post-conviction relief.  As noted above, Castro raised this claim on direct appeal where it was found to be meritless.

A person convicted of a crime is entitled to effective assistance of counsel in his first appeal of right.  *Evitts*, 469 U.S. at 394.  The general standard for judging performance of counsel established in *Strickland* also applies to claims of ineffective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998).  Applying *Strickland*, to prevail on a claim that appellate counsel was constitutionally ineffective, petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (*citing Evitts*, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel

65

may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held ineffective for failure to raise every conceivable issue. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

In this case, Castro suggests that appellate counsel should have raised the claims he now urges. Each of those claims, however, have been found to be meritless when raised by Castro himself on direct appeal and/or post-conviction review. The claims already addressed in the state courts and in this federal court were based on the same facts and legal theories Castro claims his appellate counsel should have urged. Regardless of how these arguments may be labeled in the various courts, they lack merit. Castro presents nothing that might persuade this Court that the state Louisiana Fifth Circuit would have reached a different conclusion had appellate counsel raised these issues on his own on direct appeal.

Castro, therefore, has not shown that his appellate counsel failed to raise a nonfrivolous or

potentially meritorious issue on direct appeal.  He has not demonstrated any deficient performance on the part of his appellate counsel or shown any prejudice caused by counsel's failure to assert these meritless and unsupportable claims in his appeal.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  Castro is not entitled to relief on this issue.

**XVIII.       <u>Recommendation</u>**

For the foregoing reasons, it is **RECOMMENDED** that Castro's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[70]

New Orleans, Louisiana, this 9th day of June, 2014.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[70]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.